# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

GWAYNE FISHER,
     Petitioner,

     v.                                       No. 3:13-cv-142 (SRU)

UNITED STATES OF AMERICA,
     Respondent.

## RULING AND ORDER ON PETITIONER'S
## MOTION TO VACATE, CORRECT OR SET ASIDE SENTENCE

On January 29, 2013, *pro se* petitioner Gwayne Fisher, currently imprisoned at Federal Correctional Institution Schuylkill in Minersville, Pennsylvania, filed a timely motion to vacate, set aside, or correct his sentence ("habeas petition"), pursuant to 28 U.S.C. § 2255. On May 16, 2008, a jury convicted Fisher of conspiracy to possess with intent to distribute, and conspiracy to distribute, 500 grams or more of a mixture and substance containing a detectable amount of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(ii), and 846; possession with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B); and use of a telephone to facilitate the commission of a drug trafficking felony, in violation of 21 U.S.C. § 843(b). Verdict, *United States v. Gwayne Fisher*, No. 3:07-cr-120 (SRU) (D. Conn. May 16, 2008) (3:07-cr-120, doc. 199). After multiple hearings to determine whether Fisher qualified as a second offender, District Judge Mark R. Kravitz[1] sentenced Fisher to the statutory mandatory-minimum sentences of 120 months' imprisonment and 96 months' imprisonment, to run concurrently. Judgment (3:07-cr-120, doc. 333).

---

1.  Judge Kravitz presided over Fisher's criminal case, including Fisher's motions for post-trial relief.  After Judge Kravitz's passing, Fisher's criminal case and his habeas petition were transferred to me.  Order of Transfer, *United States v. Gwayne Fisher*, No. 3:07-cr-120-3 (SRU) (D. Conn. Jan. 30, 2013) (doc. 390).

Fisher seeks review of his underlying conviction and sentence and raises several grounds upon which he alleges he received ineffective assistance of counsel during his criminal trial and direct appeal in violation of the Sixth Amendment of the U.S. Constitution. Based on the entire record and for the reasons set forth in this ruling, Fisher's petition is **denied**.

## I.    Standard of Review

Section 2255 provides a prisoner in federal custody a limited opportunity to challenge the legality of the sentence imposed upon him. *United States v. Addonizio*, 442 U.S. 178, 184 (1979). In order to prevail, the petitioner must show either (1) that his sentence was imposed in violation of the U.S. Constitution or the laws of the United States; (2) that the sentencing court lacked jurisdiction to impose such a sentence; (3) that the sentence exceeded the maximum detention authorized by law; or (4) that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). Collateral relief is only available for a constitutional error that constitutes a "fundamental defect which inherently results in a complete miscarriage of justice." *Hill v. United States*, 368 U.S. 424, 428 (1962).

Section 2255 "may not be employed to relitigate questions which were raised and considered on direct appeal." *Cabrera v. United States*, 972 F.2d 23, 25 (2d Cir. 1992); *see also Reese v. United States*, 329 F. App'x 324, 326 (2d Cir. 2009) (summary order) (quoting *United States v. Sanin*, 252 F.3d 79, 83 (2d Cir. 2001)). If a petitioner fails to raise an issue upon direct appeal, that issue will be deemed procedurally defaulted and unreviewable, absent a demonstration of ineffective assistance of counsel, an "intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *United States v. Becker*, 502 F.3d 122, 127 (2d Cir. 2007) (quoting *United States v. Tenzer*, 213

F.3d 34, 39 (2d Cir. 2000)); *see also Bousley v. United States*, 523 U.S. 614, 622 (1998);

*Massaro v. United States*, 538 U.S. 500, 504 (2003).

The petitioner bears the burden of proving, by a preponderance of the evidence, that he is

entitled to relief. *See Napoli v. United States*, 45 F.3d 680, 683 (2d Cir. 1995). A district court is

not required to accept the petitioner's factual assertions as credible "where the assertions are

contradicted by the record in the underlying proceeding." *Puglisi*, 586 F.3d at 214. Section 2255

also requires that the district court hold a hearing on the petitioner's motion unless "the motion

and the files and records of the case conclusively show that the prisoner is entitled to no relief."

*Chang v. United States*, 250 F.3d 79, 85 (2d Cir. 2001) ("[A]lthough a hearing may be

warranted, that conclusion does not imply that a movant must always be allowed to appear in a

district court for a full hearing if the record does not conclusively and expressly belie his claim")

(citing *Machibroda v. United States*, 368 U.S. 487, 495 (1962)).


## II.    Background

### A.    Pre-Trial and Trial Proceedings

On May 22, 2007, a grand jury returned an indictment (3:07-cr-120, doc. 1) charging

Fisher and six co-defendants with conspiracy to possess with intent to distribute, and conspiracy

to distribute, cocaine and cocaine base ("crack"), in violation of 21 U.S.C. §§ 841(a)(1),

841(b)(1)(B)(ii) or 841(b)(1)(C)(iii), and 846. On April 29, 2008, a second grand jury returned a

superseding indictment (3:07-cr-120, doc. 165) that charged Fisher with conspiracy to possess

with intent, and conspiracy to distribute, 500 grams or more of a mixture and substance

containing a detectable amount of cocaine, in violation of 21 U.S.C. §§ 841(a)(1),

841(b)(1)(B)(ii), and 846 [Count One]; possession with intent to distribute 500 grams or more of

a mixture and substance containing a detectable amount of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) [Count Two]; and use of a telephone to facilitate the commission of a drug trafficking felony, in violation of 21 U.S.C. § 843(b) [Count Three].

On May 1, 2008, the government submitted notice pursuant to 21 U.S.C. § 851, stating that Fisher had committed prior felony drug offenses and should be designated as a second offender during sentencing (3:07-cr-120, docs. 169, 170). On May 6, 2008, the government moved to join Fisher's trial with that of Nicholas Rojas, a separately indicted defendant who, the government alleged, had participated in a different drug-distribution conspiracy with the same principal, Luis A. Colon, who headed the conspiracy in which Fisher was implicated. (3:07-cr-120, doc. 177) The government argued that joinder was justified based on the similarity between the two conspiracies and the substantially overlapping proof in the two cases, including a wiretap on which both defendants were intercepted. The government's motion was granted. (3:07-cr-120, doc. 178)

The joint trial was held over four days, from May 12, 2008 through May 15, 2008. At trial, Fisher's counsel contended that Fisher had not conspired with Colon, but merely entered into a buyer-seller relationship with him. The jury apparently rejected that argument and returned a verdict convicting Fisher of all three counts in the superseding indictment. (3:07-cr-120, doc. 199)

B.  Post-Trial Proceedings

On May 21, 2008 and October 28, 2008, Fisher moved for acquittal, or alternately, for a new trial, alleging that the record evidence was insufficient to support a finding beyond a reasonable doubt that he was a member of a drug conspiracy. Def.'s Post-Trial Mots. (3:07-cr-120, docs. 206, 207, 275). Judge Kravitz denied all of Fisher's post-conviction motions on the

merits (3:07-cr-120, doc. 290).

In preparation for sentencing, Fisher's trial counsel filed a response objecting to the government's second offender information and denying that he had been convicted of prior qualifying felonies (*Fisher*, doc. 303). Between Fisher's conviction and his sentencing, the Second Circuit issued its decision in *United States v. Savage*, 542 F.3d 959 (2d Cir. 2008), which held that the government bears the burden of providing proof beyond a reasonable doubt that the defendant has been convicted of a felony drug offense, as defined under federal law, in order for that conviction to qualify as a "serious drug offense" under the Armed Career Criminal Act. Judge Kravitz then ordered the parties to submit briefing on *Savage's* potential application to the government's section 851 notice and Fisher's second-offender designation. (3:07-cr-120, doc. 308) On March 27, 2009, Judge Kravitz held oral argument on the government's notice. (3:07-cr-120, doc. 316) The hearing was continued to allow for further supplemental briefing. Mot. Hr'g Tr. at 43:5–44:21 (Mar. 27, 2008) (3:07-cr-120, doc. 374). On June 22, 2009, Judge Kravitz held an evidentiary hearing regarding the applicability of Fisher's alleged prior state felony drug convictions to his sentence (3:07-cr-120, doc. 327). At that evidentiary hearing, the government requested a partial continuance to allow its fingerprint expert to testify, and the parties consented to continue the hearing to July 8, 2009. Evid. Hr'g Tr. 6:5–17, 47:19–24 (June 22, 2009) (3:07-cr-120, doc. 367).

At the continued hearing, Judge Kravitz held that the government had met its burden in demonstrating that Fisher previously had been convicted of at least one qualifying felony drug crime. Based on that determination, Judge Kravitz sentenced Fisher to the statutory mandatory-minimum for a second-offender who had violated 21 U.S.C. § 841(b)(1)(B)(iii)—120 months' imprisonment on Counts One and Two, and 96 months' imprisonment on Count Three, all to run

concurrently. Sent. Hr'g Tr. 23:14–26:7 (3:07-cr-120, doc. 368); Judgment (3:07-cr-120, doc. 333).[2]

 Fisher timely appealed to the Second Circuit, where he was initially represented by his trial counsel. Fisher submitted several *pro se* letters to the Second Circuit, alleging that his trial counsel had provided ineffective assistance of counsel and requesting an extension of deadlines until new appellate counsel could be appointed. In light of Fisher's representations to the court, his counsel filed a motion to withdraw as appellate counsel, which the Second Circuit granted. Mot. To be Relieved as Counsel, *United States v. Fisher*, No. 09-3356-cr (May 24, 2010). The Second Circuit appointed new CJA appellate counsel, who represented Fisher throughout briefing and at oral argument. (No. 09-3356, June 1, 2010) Despite the appointment of new counsel, Fisher continued to submit independent filings to the Second Circuit, including a motion for leave to file *pro se* pleadings. (No. 09-3356-cr, June 7, 2011).

 On November 16, 2011, the Second Circuit issued a summary order affirming the judgment of the district court and holding that Fisher "has failed to raise a plausible ineffectiveness claim because he cannot demonstrate that any alleged deficiencies in his trial counsel's performance deprived him of a fair trial." *United States v. Fisher*, 445 F. App'x 436, 437 (2d Cir. 2011) (summary order) (citing *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). On December 9, 2011, the Second Circuit granted Fisher's motion to relieve counsel and allowed Fisher a thirty-day extension to file a *pro se* petition for rehearing. (No. 09-3356-cr, Dec. 9, 2011) When no petition was filed, on February 3, 2012, the Second Circuit issued its mandate and closed the case. (No. 09-3356-cr, Feb. 3, 2012) Fisher did not file a brief or motion for a rehearing or for *en* banc review, and he did not file a petition for a writ of certiorari.

---

2. Fisher's judgment was later amended to correct a clerical error regarding the proper spelling of the defendant's name.  Am. Judgment (3:07-cr-120, doc. 337).

On January 29, 2013, within the statute of limitations set forth by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2255(f), Fisher filed a *pro se* habeas petition requesting that the district court vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. Petition, *Fisher v. United States*, No. 3:13-cv-142 (SRU) (D. Conn.) (doc. 1). On October 25, 2013, with the leave of the court, Fisher filed an amended habeas petition (3:13-cv-142, doc. 15).

## III.  Discussion

Fisher challenges his conviction and sentence, alleging that he was provided ineffective assistance of counsel. At the pre-trial stage, Fisher alleges that his trial counsel: (1) failed to conduct an adequate pre-trial investigation; (2) failed to object to joinder of his case with co-defendant Nicholas Rojas; and (3) failed to assert a speedy trial violation. At the trial stage, Fisher alleges that his trial counsel: (5) failed to develop a misidentification defense; (6) failed to contest the admissibility of the government's wiretap recordings; (7) failed to effectively cross-examine key government witnesses; (8) failed to present a viable buyer-seller defense; and (9) failed to contest an improper jury instruction regarding co-defendants. At the sentencing stage, Fisher alleges that his trial counsel: (10) failed to contest the government's section 851 notice in light of the Second Circuit's decision in *United States v. Savage*, 542 F.3d 959 (2d Cir. 2008); and (11) failed to argue for a downward departure based on extraordinary family circumstances. Finally, Fisher alleges that (12) counsel "pursued his own interest," resulting in a prejudicial conflict of interests throughout the proceedings, when Fisher declined to accept the government's plea offer.

A petitioner claiming ineffective assistance of counsel "must show that (1) counsel's

performance was objectively deficient, and (2) petitioner was actually prejudiced as a result."
*Harrington v. United States*, 689 F.3d 124, 129 (2d Cir. 2012) (citing *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)). The Second Circuit has directed district courts to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* (citing *Strickland*, 466 U.S. at 687–88). The standard for determining if counsel's conduct falls within that range is not whether counsel "'deviated from best practices or most common custom,' but whether his 'representation amounted to incompetence under prevailing professional norms.'" *Id.* at 129–30 (citing *Harrington v. Richter*, 562 U.S. 86, 105 (2011)). A reviewing court must assess an attorney's performance "at the time of counsel's conduct," *Strickland*, 466 U.S. at 690, and must not "use hindsight to second-guess his strategy choices." *Mayo v. Henderson*, 13 F.3d 528, 532 (2d Cir. 1994) (citing *Lockhart v. Fretwell*, 506 U.S. 364, 372–73 (1993)). To demonstrate prejudice, a petitioner must show "a reasonable probability that his reliance on his counsel's ineffective assistance affected the outcome of the proceedings." *Pham v. United States*, 317 F.3d 178, 182 (2d Cir. 2003). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

Many of Fisher's arguments were previously rejected by the Second Circuit on direct appeal. To the extent that Fisher raises new arguments for the first time on collateral review, those arguments similarly fail to demonstrate that his counsel was constitutionally ineffective.

A. Previously Raised Misidentification Arguments

Although the Second Circuit's practice is to allow a petitioner to pursue a direct appeal and "one full opportunity to seek collateral review" of a judgment, *Wall v. United States*, 619 F.3d 152, 155 (2d Cir. 2010) (per curiam) (internal citation omitted), a habeas petition "may not be employed to relitigate questions which were raised and considered on direct appeal."

*Cabrera*, 972 F.2d at 25.

The record indicates that appellate counsel raised, but did not prevail on, many of the arguments Fisher makes here. Specifically, Fisher's arguments that trial counsel failed to conduct an adequate pre-trial investigation, to effectively cross-examine key government witnesses, and to contest the admissibility of the government's wiretap evidence are all variations on Fisher's argument that trial counsel failed to develop a misidentification defense and to prevent identification evidence from being admitted into evidence at trial. In his direct appeal, however, Fisher objected to the same conduct, although there he was attempting to argue that trial counsel's failure to *stipulate* to the "Fruit" nickname caused prejudice. *See* Appellant's Br. at 48–51, 53–57. The Second Circuit rejected that argument, observing that even assuming there were legal errors in how the identification evidence was handled, the case against Fisher was "overwhelming," and certainly sufficient to allow a reasonable jury to find proof of his guilt beyond a reasonable doubt. *Fisher*, 445 F. App'x at 438; *see also id.* at 437–40; Mem. of Decision denying Def.'s Post-Trial Mots. 10 n.3 (3:07-cr-120, doc. 290) (considering and rejecting Fisher's arguments regarding identification). Having failed to demonstrate that counsel was ineffective for failing to pursue one strategy, Fisher cannot now challenge exactly the same conduct as ineffective simply because he has come up with a *different* strategy that could have been pursued—an ineffective assistance challenge is not an opportunity to "use hindsight to second-guess [counsel's] strategy choices." *Mayo*, 13 F.3d at 532.

Moreover, even if the district court and Second Circuit had not already rejected those arguments, the trial record clearly indicates that trial counsel cross-examined the government's witnesses, and argued Fisher's misidentification. Thus, trial counsel did not fail to raise the issue of misidentification—indeed, he vigorously argued that Fisher had been misidentified and sought

to exclude or impeach testimony offered for the purpose of identifying Fisher's voice on the recordings.[3] Accordingly, those ineffective assistance arguments must fail.

### B.  Counsel's Lack of Success Does Not Constitute Ineffective Assistance of Counsel

Fisher notes several instances during the liability and sentencing phase of his prosecution, in which he claims his counsel failed to raise certain arguments or develop alternate theories.

#### 1.  *Pre-Trial Objections*

Fisher alleges for the first time on collateral review that, at the pre-trial stage, his trial counsel: (1) failed to object to joinder of his case with co-defendant Nicholas Rojas; and (2) failed to assert a speedy trial violation.

First, Fisher argues that his counsel's failure to object to the joinder of his trial with that of Nicholas Rojas, a separately-indicted defendant charged with a conspiracy involving the same principal co-conspirator, Luis Anthony Colon, was objectively unreasonable because the joinder posed a serious risk of evidentiary spill-over.

Rule 13 of the Federal Rules of Criminal Procedure provides that "[t]he court may order that separate cases be tried together as though brought in a single indictment or information if all offenses and all defendants could have been joined in a single indictment or information." Rule 8(b), in turn, governs whether the defendants "could have been joined in a single indictment." It states:

> Two or more defendants may be charged in the same indictment or information if they

---

3.   For example, Fisher's trial counsel successfully moved to exclude a Waterbury police officer's use of Fisher's alleged nickname during his testimony.  Def.'s Mot. in Limine (3:07-cr-120, doc. 184); Order *granting* Def.'s Mot. in Limine (3:07-cr-120, doc. 324) (granted prior to trial, but entered onto the docket after trial).  Additionally, although Fisher's trial counsel was unsuccessful in fully excluding testimony from certain law enforcement witnesses, counsel was successful in requesting that the court limit the scope of those witnesses' testimony.  *Fisher*, 475 F. App'x at 438 ("[T]he court imposed limitations on [law enforcement's] testimony" to limit the risk of introducing inflammatory or prejudicial evidence.); *see also* Jury Trial Tr. at 1:6–25 (May 14, 2008) (3:07-cr-120, doc. 370).

are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

*Id.* "In the Second Circuit, a 'commonsense rule' is applied 'to decide whether, in light of the factual overlap among charges, joint proceedings would produce sufficient efficiencies such that joinder is proper notwithstanding the possibility of prejudice to [one or more of] the defendants resulting from the joinder.'" *United States v. Smitherman*, 2014 WL 6609648, at *1 (W.D.N.Y. Nov. 20, 2014) (quoting *United States v. Shellef*, 507 F.3d 82, 98 (2d Cir. 2007)).

In the present case, joinder reasonably promoted efficiencies of the kind contemplated by Rule 13 and Rule 8(b)—although Fisher and Rojas were charged in separate indictments, they each were charged with conspiring with the same principal co-conspirator toward the same ends, and as a result their cases involved significant shared evidence, including a common wiretap. Gov't Mot. for Joinder, at 6 (3:07-cr-120, doc. 177). Accordingly, Fisher's trial counsel was unlikely to win any objection he might have brought against the joinder, and therefore Fisher cannot now demonstrate either that the decision not to object was unreasonable, nor that he was prejudiced by it. On the contrary, the joinder may well have benefitted trial counsel's legal strategy—as the government points out, Rojas provided an example of a much closer relationship to Colon that could have established a helpful contrast when trial counsel argued that Fisher was merely a buyer, rather than a co-conspirator of Colon's. Trial counsel's conduct here thus constitutes a reasonable, if unsuccessful, decision about trial strategy.

Fisher's Speedy Trial Act argument is closely related to his joinder argument, and accordingly fails on the same grounds. He concedes that there has been no technical violation of the Speedy Trial Act, but instead avers that the government violated his Sixth Amendment right to a speedy trial when it filed a superseding indictment for the improper purpose of obtaining a

- 11 -

tactical advantage—here, joining Fisher's case with Rojas's cases. Am. Petition at 38–40. As explained above, however, joinder of the two defendants was not itself improper, and the filing of a superseding indictment in order to facilitate a proper joinder does not give rise to a Sixth Amendment speedy trial violation.

Fisher has thus failed to show he received ineffective assistance of counsel at the pre-trial stage of the criminal proceedings.

### 2. *Trial-Stage Objections*

Fisher alleges for the first time on collateral review that, at the trial stage, his trial counsel: (1) failed to present a viable buyer-seller defense; and (2) failed to contest an improper jury instruction regarding co-defendants. The record shows, however, that trial counsel did pursue both of those tactics; as discussed above, his lack of success does not render his efforts constitutionally ineffective.

First, counsel developed and maintained throughout trial and upon appeal that Fisher was not a member of a conspiracy, but rather, a mere "buyer" who bought cocaine for personal use without the intent to distribute it further. The jury was instructed on the buyer-seller defense. *See* Jury Instr. Tr. at 578:19–579:9, *available in* Gov't Appendix ("GA"), 09-3356-cr (2d Cir.) at 578–79. In his memorandum of decision denying Fisher's post-trial motions, Judge Kravitz recognized that Fisher's trial counsel had elicited evidence in the trial record supporting the buyer-seller defense, but ultimately held that the government had provided a sufficient evidentiary basis for a reasonable jury to have found, beyond a reasonable doubt, that Fisher had knowingly and voluntarily entered into a conspiracy to possess and distribute cocaine. *See generally* Mem. of Decision denying Def.'s Post-Trial Mots. at 10–14 (3:07-cr-120, doc. 290).

Instead of arguing for any constitutional deficiency in trial counsel's approach, Fisher's argument here amounts to an attempt to improperly second-guess the decisions made by defense counsel with the benefit of hindsight. *See Flores-Ortega*, 528 U.S. at 482.

Fisher's allegation that his counsel failed to request a jury instruction regarding co-defendant culpability is also contradicted by the record. In his proposed jury instructions, Fisher's trial counsel explicitly requested a co-defendant instruction, as well as a co-conspirator instruction. Proposed Jury Instr. 36 (3:07-cr-120, doc. 162); Charge Conf. Tr. at 477:11–481:4 (3:07-cr-120, doc. 369) (Rojas's counsel requesting a charge, and Fisher's counsel confirming the co-defendant charge). Fisher cannot credibly argue that his trial counsel was ineffective simply because Fisher ultimately did not prevail.

Fisher has thus failed to show that he received constitutionally ineffective assistance of counsel at the trial-stage of the criminal proceedings.

3. *Sentencing-Stage Objections*

Fisher alleges for the first time on collateral review that, at the sentencing stage, his trial counsel: (1) failed to contest the government's section 851 notice in light of the Second Circuit's decision in *United States v. Savage*, 542 F.3d 959 (2d Cir. 2008); and (2) failed to argue for a downward departure based on extraordinary family circumstances. Again, the trial record contradicts both assertions.

The record reveals that trial counsel made extensive arguments against the government's 851 notice. Shortly before Fisher's criminal trial, the government filed its notice of intent to demonstrate that Fisher was a "second offender" with a prior conviction for a drug trafficking crime or a crime of violence within the meaning of 21 U.S.C. § 851. (3:07-cr-120, docs. 119,

- 13 -

169, 170) Fisher's trial counsel timely objected to the government's second offender notice and

denied that Fisher had prior convictions sufficient to establish increased punishment. Def.'s Obj.

to Gov't Notice (3:07-cr-120, doc. 303). At Judge Kravitz' request, Fisher's trial counsel also

submitted a brief arguing that, consistent with *Savage*, the government had failed to meet its

evidentiary burden in demonstrating that Fisher had committed a qualifying state felony. (3:07-

cr-120, doc. 313) Judge Kravitz then held two evidentiary hearings in order to determine whether

the government had met its burden in demonstrating that Fisher previously had been convicted of

at least one qualifying felony drug crime, and determined that it had done so. At the sentencing

itself, Fisher's trial counsel restated his objection to the government's section 851 notice.[4]

Sentencing Tr. at 7:20–8:5 (3:07-cr-120, doc. 368). Judge Kravitz observed that trial counsel had

"preserved [his] position" in opposing his section 851 ruling. *Id.* at 7:23–25. In sum, throughout

the sentencing proceedings, Fisher's trial counsel made a full-throated argument against the

section 851 notice. His failure to persuade Judge Kravitz was not the result of ineffective

assistance; ultimately the government prevailed because Judge Kravitz determined that Fisher's

prior convictions fit under the *Savage* rule.[5]

Moreover, Fisher cannot show prejudice on the section 851 issue. Even if trial counsel

had successfully excluded the two convictions that Fisher contests, the government provided

---

4.  Trial counsel acknowledged that Judge Kravitz had found that Fisher qualified for a second-offender
designation under 21 U.S.C. § 851, and he renewed his objection at sentencing. Fisher's trial counsel argued,

> [The] 851 law is draconian. I feel it's unconstitutional, I feel it's improper. One
> of the qualifying convictions for Mr. Fisher is a matter where he paid a fine. To
> double someone's punishment from five to ten [years' imprisonment] I think is
> in a word ridiculous. . . . I disagree with the fact that 851 exists and doing what
> it's doing to this gentleman.

Sentencing Tr. at 16:4–15 (3:07-cr-120, doc. 368). Trial counsel went on to state that he intended to challenge
section 851's constitutionality upon Fisher's appeal, which he did in fact raise in Fisher's first petition for direct
appeal.

5.  At the time he was sentenced, Fisher had four prior state convictions for the unlawful sale of narcotics, with his
most recent pre-indictment conviction occurring in March 2006. Def.'s Sentencing Mem. at 6–7 (3:07-cr-120, doc.
329).

- 14 -

evidence of two other qualifying drug convictions. Because only one prior qualifying felony is required to trigger the second-offender sentencing enhancements, Fisher cannot demonstrate that he was in any way harmed by counsel's alleged failure to successfully exclude two of Fisher's prior state drug convictions.

Similarly, Fisher's trial counsel argued at length for a downward departure from the imprisonment range established by the U.S. Sentencing Guidelines based on Fisher's family circumstances. He noted that Fisher cared for his five children, one of whom had significant special needs, and his wife worked several jobs to financially support the family. Sentencing Tr. at 13:15–14:12 (3:07-cr-120, doc. 368). Although he did not ultimately grant the downward departure, Judge Kravitz specifically noted Fisher's "difficult family circumstances" and that letters written in support of Fisher all stated that he was "a good husband and good father." *Id.* at 22:14–18. In light of those circumstances, Judge Kravitz recommended that the Bureau of Prisons place Fisher in a facility as close as possible to Connecticut to allow his family to visit. *Id.* at 23:5–11.

Thus, Fisher has failed to show that he received constitutionally ineffective assistance of counsel at the sentencing stage of the criminal proceeding.

### 4. *Conflict of Interest*

Finally, Fisher alleges for the first time on collateral review that trial counsel developed a conflict of interest when Fisher declined to accept the government's plea deal and instead opted for trial. "In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980). An actual conflict is shown

"only if the defendant demonstrates that counsel 'actively represented conflicting interests.'" *Strickland*, 466 U.S. at 692 (quoting *Cuyler*, 466 U.S. at 350).

Fisher has made no effort to show that trial counsel was representing interests contrary to his own. Instead, he urges the court to infer from trial counsel's unsuccessful trial strategy that counsel had a vested interest in forcing Fisher to plead guilty, apparently so he could avoid having to take the case to trial. There is simply no evidence of that "conflict" in the record— instead, as discussed above, trial counsel clearly made significant efforts to prepare the case for trial, pursued a reasonable defensive strategy throughout the trial, and continued that zealous representation through Fisher's sentencing.

## IV.   Conclusion

Fisher has failed to meet the requirements for a successful section 2255 petition. Accordingly, his petition is DENIED. Because Fisher has failed to make "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), a certificate of appealability will not issue. The Clerk shall enter judgment and close the file.

So ordered.

Dated at Bridgeport, Connecticut, this 17th day of October 2016.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge

- 16 -